<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOTHAM CITY ORTHOPEDICS, LLC, *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>UNITED HEALTHCARE INS. CO., *et al.*,<br><br>       Defendants. | Case No. 2:21-cv-09056 (BRM) (ESK)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before the Court is Defendants United Healthcare Insurance Company, United Healthcare Services, Inc., and United Healthcare Services, LLC's (collectively, "United") Motion to Dismiss (ECF No. 41) Plaintiffs Gotham City Orthopedics, LLC ("Gotham") and Sean Lager, M.D.'s ("Dr. Lager," and together, "Plaintiffs") Amended Complaint (ECF No. 26) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Plaintiffs filed an opposition to the Motion (ECF No. 42) and United filed a reply (ECF No. 43). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, United's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

1

I.   **BACKGROUND**

For the purposes of a motion to dismiss for failure to state a claim, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court applies this same standard on a motion to dismiss for lack of standing. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). When ruling on a motion to dismiss, the Court generally "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d. Cir. 1985). However, documents "*integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion into one for summary judgment." *Id.* (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an [i]ndisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

This case involves an attempt to recoup $2.8 million in payments for out-of-network medical services Plaintiffs allege were underpaid and/or wrongfully denied. (ECF No. 26 ¶¶ 1, 3.) Gotham is an orthopedic medical practice in Clifton, New Jersey. (*Id.* ¶ 6.) Dr. Lager is a physician and member of Gotham. (*Id.* ¶ 7.) United is an insurance company that sponsors, issues, and administers health benefit plans. (*Id.* ¶ 11.) Plaintiffs bring this suit on behalf of 31 patients, under 32 health benefit plans (the "Plans"),[2] who allegedly either assigned to Plaintiffs their benefits and/or executed powers of attorney. (*Id.*) Of the 32 plans, 27 are governed by the Employee

---

[2] Two claims, under two different health benefit plans, are brought on behalf of patient H.M. (ECF No. 26 at 70.)

Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 41-2, Exs. 1–32.)[3] Twenty-one of the plans contain prohibitions on the assignment of benefits.[4] (*Id.*)

On April 13, 2021, Gotham filed a nine-count Complaint against United. (*See generally* ECF No. 1.) Plaintiffs filed an Amended Complaint on September 7, 2021, adding Dr. Lager. (*See generally* ECF No. 26.) The Amended Complaint asserts the following counts brought under ERISA:

    I.    Benefits Due Under ERISA § 502(a)(1)(B)

    II.    Violation of Fiduciary Duties of Loyalty and Care

    III.    Failure to Provide Plan Documents

    IV.    Attorneys' Fees and Costs Under ERISA

(*See generally id.*)

Plaintiffs also claim the following state law causes of action in the event the plans were not governed or preempted by ERISA:

    V.    Breach of Contract

    VI.    Breach of the Covenant of Good faith and Fair Dealing

    VII.    Promissory Estoppel[5]

    VIII.    Unjust Enrichment

    IX.    Quantum Meruit

(*See generally id.*)

---

[3] Per *In re Burlington Coat*, the Court may consider these exhibits to United's Motion to Dismiss, which show the plan documents, because Plaintiffs' claims are based off these documents and because Plaintiffs explicitly rely on them in their Amended Complaint.

[4] This includes 16 ERISA plans and all 5 non-ERISA plans.

[5] Plaintiffs have voluntarily withdrawn Count VII for promissory estoppel. (ECF No. 42 at 24.)

On October 22, 2021, United filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 41.) Plaintiffs opposed the Motion on January 24, 2022. (ECF No. 42.) On February 25, 2022, United replied. (ECF No. 43.)

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). In a 12(b)(1) motion, the Court must accept as true all material allegations set forth in the complaint and construe those facts in favor of the nonmoving party. *Ballentine*, 486 F.3d at 810. In evaluating a 12(b)(1) motion, the Court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion is a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), and "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). In contrast, if the motion is a factual attack, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)). Here, the Motion to Dismiss is a facial attack because United asserts it is immune from Plaintiffs' claims as pled. However, the Court may consider the plan documents attached to the Motion as they are integral to and expressly relied upon in Plaintiffs' Amended Complaint.

4

**B.     Rule 12(b)(6)**

In deciding a Rule 12(b)(6) motion, the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; the complaint must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual

5

claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F. 4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

### III. DECISION

United argues it did not waive the anti-assignment provisions, which would preclude Plaintiffs from claiming derivative standing for most of the plans. (ECF No. 41-1 at 12–15, 20–22.) United further contends Plaintiffs are similarly precluded from claiming standing via powers of attorney for failing to meet the relevant statutory requisites. (*Id.* at 15–20.) For the ERISA claims where standing is not an issue, United argues Plaintiffs fail to state a claim. (*Id.* at 22–29.) As to the state law claims, United asserts Plaintiffs' claims are preempted by ERISA. (*Id.* at 29–32.) Finally, United argues Plaintiffs' state law claims also fail to meet their pleading requirements. (*Id.* at 32–38.) The Court examines each argument in turn.

## A. ERISA Claims (Counts I through IV)

### 1. Standing

#### i. Assignment of benefits

Anti-assignment provisions in health insurance plans are routinely enforced based on the general principle that courts will enforce the terms of a freely negotiated contract. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018). Here, the parties do not dispute the validity of the anti-assignment provisions. Instead, Plaintiffs argue United waived its right to enforce the anti-assignment provisions through its course of conduct and dealings. (ECF No. 42 at 9–10.)

Under New Jersey law, waiver requires "the intentional relinquishment of a known right and must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." *Somerset Orthopedic Assoc., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2020 WL 1983693, at *6 (D.N.J. Apr. 27, 2020) (citing *Scibek v. Longette*, 770 A.2d 72, 82 (N.J. Super. Ct. App. Div. 2001). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2003). The burden of proving waiver lies with the party asserting it. *Advanced Orthopedics and Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14-7280, 2015 WL 4430488, at *6 (D.N.J. July 20, 2015).

Here, Plaintiffs argue United waived its right to enforce anti-assignment provisions "by submitting payment for out-of-network services directly to Plaintiff for certain claims assigned to Plaintiff by the United Insured." (ECF No. 26 ¶ 400.) However, decisions from this District have repeatedly held "sending a direct payment alone does not constitute a waiver of an anti-assignment

7

provision." *Advanced Orthopedics*, 2015 WL 4430488, at *7; *accord Kaul v. Horizon Blue Cross Blue Shield*, 2016 WL 4071953, at *2 (D.N.J. July 29, 2016) (collecting cases).

Plaintiffs also allege waiver based on "the interaction and communication between United and Plaintiff with respect to processing of the underlying Claims." (ECF No. 26 ¶ 400.) More specifically, Plaintiffs maintain United "never claimed that it has the right to reject Claims because they were assigned to Plaintiff," thereby preventing Plaintiffs from raising an appropriate defense. (*Id.* ¶ 33.) This argument is without merit. In *Somerset*, the plaintiff similarly argued the defendants waived their right to enforce anti-assignment provisions because they did not invoke the relevant provisions during reimbursement conversations. 2020 WL 1983693, at *7. The court in *Somerset* concluded the plaintiff did not meet its burden of alleging waiver, finding the defendants' conduct was "routine" and "d[id] not demonstrate an intentional relinquishment of any known rights." *Id.*; *see also Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 607 (D.N.J. 2011) (holding "even if [the] defendant had knowledge of the assignment, mere silence or inaction cannot give rise to" waiver of anti-assignment provisions). Likewise, the Court finds United's alleged conduct does not constitute the clear, unequivocal, and decisive action necessary for an implied waiver.

### ii. Powers of attorney

Plaintiffs alternatively claim standing is proper by way of the executed powers of attorney. (ECF No. 26 ¶ 25.) United counters, correctly, Gotham cannot be an attorney-in-fact as a matter of law because it is not an individual. (ECF No. 41-1 at 15) (citing *Somerset*, 2020 WL 1983693, at *8) (holding "medical practices cannot act as attorneys-in-fact under [N.J.S.A. 46:2B-8.2(a)]", which governs powers of attorney).

As for Dr. Lager, United contends Plaintiffs failed to plead completion of the statutory requirements for a duly executed power of attorney. (ECF No. 41-1 at 17–20.) In New Jersey, a

8

power of attorney "means a duly signed and acknowledged written document in which a principle authorizes an agent to act on his behalf." N.J.S.A. 46:2B-10. The maker of a power of attorney "shall appear before an officer specified in R.S.46:14-6.14 and acknowledge that it was executed as the maker's own act." N.J.S.A. 46:14-2.1. "The officer taking an acknowledgment or proof shall sign a certificate stating that acknowledgment or proof." *Id.* The certificate must also state: (1) the maker or the witness personally appeared before the officer; (2) the officer was satisfied the person who made the acknowledgment or proof was the maker of or the witness to the instrument; (3) the jurisdiction in which the acknowledgment or proof was taken; (4) the officer's name and title; and (5) the date on which the acknowledgment was taken. *Id.*

Here, Plaintiffs have not attached any power of attorney forms. Instead, they provide an alleged sample from a power of attorney form, purportedly signed by Gotham's patients, in their Amended Complaint. (ECF No. 26 ¶ 36.) Plaintiffs allege:

> A sample of Power of Attorney form signed by Gotham's patients (including the United Insureds at issue) specifically states "I further grant limited power of attorney to you as my medical provider to receive and collect directly money due for services rendered to me in this matter . . ." and authorizes Plaintiff's attorneys "to collect payment for medical services directly against the carrier in this case, in my name, including filing an arbitration demand or lawsuit. I specifically authorize that the attorney to file directly against that carrier in my name or in your name as my medical provider rendering services to me . . .".

(*Id*.) Putting aside the lack of an attached power of attorney form, the proffered sample, or the allegations related thereto, does not sufficiently demonstrate that the form fully adhered to all formalities required for a valid power of attorney. There is no mention of witnesses, no signed certificate of acknowledgement by an officer, nor any of the other requirements of a proper acknowledgement per N.J.S.A. 46:14-2.1. Because Dr. Lager's sample power of attorney lacks the requisite legal specificity, he also lacks standing to bring claims on behalf of his patients. *Sorotzkin*

9

*et al. v. Abaline Paper Prods., Inc.*, No. 20-8234, 2021 WL 2177547, at *3–*4 (granting motion to dismiss for lack of standing where the proffered power of attorney did not detail if, when, or where a subscribing witness executed the form); *see also Enlightened Sols., LLC v. United Behavioral Health*, No. 18-5572, 2018 WL 6381883, at *6 (D.N.J. Dec. 6, 2018) (granting the same where the formalities of a valid power of attorney were not met).

In sum, as Gotham cannot as a matter of law hold a valid power of attorney, and because the Court previously held United did not waive its right to enforce the anti-assignment provisions in 21 of the 32 plans, the Court finds Gotham is without standing and accordingly grants United's Motion as it pertains to Gotham and those 21 plans.[6] Additionally, Plaintiffs' claims regarding Dr. Lager are similarly dismissed as Plaintiffs fail to sufficiently allege facts indicating a valid power of attorney.

    2.    **Merits**

Regarding the 11 remaining ERISA plans that do not include anti-assignment provisions, United argues Plaintiffs fail to meet the Rule 12(b)(6) pleading requirements.

    i.    **Claim for benefits due (Count I)**

ERISA § 502(a)(1)(B) provides a plan participant or beneficiary the right to initiate a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To recover under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits

---

[6] This includes 16 of the 27 ERISA plans. Therefore, 11 ERISA plans remain, although Plaintiffs have not attached the alleged assignments of these 11 plans in their Amended Complaint or in their Opposition Brief. Further, as the anti-assignment provisions cover all 5 non-ERISA plans, all of Plaintiffs' claims pertaining to the non-ERISA plans are also dismissed.

are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobile Corp.*, 465 F.2d 566, 574 (3d Cir. 2006).

United submits Plaintiffs' ERISA § 502(a)(1)(B) claim should be dismissed for failing to "demonstrate [Plaintiffs'] entitlement, as the assignee of the patients, to benefits due to it 'under terms of [the Plans]." (ECF No. 41-1 at 22) (citing *Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, No. 17-13596, 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018)). More specifically, United argues Plaintiffs fail to identify the specific plan provision under which they are entitled to reimbursement for out-of-network services at the usual, customary, and reasonable ("UCR") rate. (ECF No. 41-1 at 23.)

Plaintiffs respond "[a] plaintiff need not identify the plan or specific plan provision to state a § 502(a)(1)(B) claim." (ECF No. 42 at 16) (citing *Metro. Surgical Inst., LLC v. Cigna*, No. 19-15827, 2020 WL 4432430, at *6 (D.N.J. July 31, 2020)). Indeed, courts have held plaintiffs sufficiently pled a § 502(a)(1)(B) claim where the complaint alleges a valid assignment of benefits under the plan, entitlement to reimbursement at UCR rates, and a denial of claims that were medically necessary and should have been paid. *See, e.g.*, *Metro. Surgical*, 2020 WL 4432430, at *6 (denying motion to dismiss and listing similar cases holding the same).

Here, the Amended Complaint alleges the Plans provided United's insured with out-of-network benefits (ECF No. 26 ¶ 20); Plaintiffs are beneficiaries of under the Plans via assignment (*id.* ¶¶ 406–409); the Plans required reimbursement at UCR rates (*id.* ¶ 20); and United improperly denied or underpaid claims submitted by Plaintiffs for certain medically necessary services that should have been covered under the Plans (*id.* ¶ 21). Taken as true, the Court finds Plaintiffs have sufficiently pled a § 502(a)(1)(B) claim.

United emphasizes that the cited Plan language does not specifically *require* reimbursement at UCR rates. (ECF No. 41-1 at 23) (relying on *Atl. Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018) (dismissing claim where the complaint "fail[ed] to identify—or allege the existence of—any provision" requiring UCR reimbursement)). True, at times Plaintiffs allege the Plans "authorize" or "permit" reimbursement at UCR rates. (ECF No. 26 ¶¶ 20–22.) However, at other points Plaintiffs also allege they are "entitled" or are "supposed to be paid" at UCR rates and, at the very least, allege the existence of UCR provisions. (*Id.* ¶¶ 20, 23.) At the current juncture, the Court is satisfied Plaintiffs have met the low plausibility threshold. United's Motion to Dismiss the § 502(a)(1)(B) claim is denied.

### ii. Breach of fiduciary duties of loyalty and care (Count II)

A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). A fiduciary must also utilize "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) a plan fiduciary (2) breached an ERISA-imposed duty (3) causing a loss to the plan. *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) (citation omitted), *cert. denied* 140 S. Ct. 2565 (2020).

United argues Plaintiffs' breach of fiduciary duty claims merely offer conclusory allegations. (ECF No. 41-1 at 25.) The Court disagrees. *Metropolitan Surgical* is again instructive. There, the court found the plaintiff sufficiently pled a claim for breach of fiduciary duty where it

12

alleged the defendant: inappropriately denied certain claims that were medically appropriate, necessary, and covered by the plan terms; indiscriminately denied payment for claims based on "unsupported and erroneous" assertions; and improperly denied, underpaid, or delayed the processing of claims, resulting in a denial of out-of-network benefits to which the insured where entitled under their plans. 2020 WL 4432430, at *7.

Here, Plaintiffs have alleged very similar breaches of fiduciary duty. Plaintiffs allege United wrongfully denied claims "submitted by Plaintiff seeking medically necessary and Covered Services rendered to the United Insureds." (ECF No. 26 ¶ 52.) Plaintiffs allege these "sweeping denials" were "automatic, indiscriminate . . . lacking any/or adequate explanation of the reason or reasons for denial of Claims" other than "improper" and "erroneous" findings "that the claims were not medically necessary and the procedures were repetitive." (*Id.* ¶ 2.) Consequently, United denied, underpaid, or delayed payment of Plaintiffs' claims to which they were entitled under the Plans. (*Id.* ¶¶ 20, 414, 435.) Assuming these allegations are true, the Court finds a reasonable inference can be made United did not prudently exercise its fiduciary duties.

United also argues Plaintiffs' breach of fiduciary duties claim fails because "it is nothing more than a thinly-veiled claim for benefits and is, therefore, duplicative of Count I." (ECF No. 41-1 at 26.) ERISA § 502(a)(3) allows for "the award of appropriate equitable relief directly to a participant or beneficiary to redress any act or practice which violates any provision of this title[,] including a breach of the statutorily created fiduciary duty of an administrator." *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993) (internal quotation marks and citation omitted). Appropriate equitable relief means "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory

13

damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248. 255–56 (1993) (citing 29 U.S.C. § 1132(a)(3)).

In addition to the benefits sought under the Plans, Plaintiffs also seek restitution, injunctive, relief, declaratory relief, and disgorgement of profits. (ECF No. 26 ¶ 435.) Therefore, Plaintiffs' breach of fiduciary duty claim could also be construed as seeking equitable relief. *See Metro. Surgical*, 2020 WL 4432430, at *7 (holding the same where plaintiff sought the same relief). United's Motion as to Count II is therefore denied.

### iii.     Failure to provide plan documents (Count III)

"[A]ny administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary . . . ." (29 U.S.C. § 1132(c)(1)(B). "[O]nly the Plan Administrator can be liable for statutory penalties for failing to provide the Plan Documents." *Maishka v. MetLife*, 639 F. App'x 788, 791 (3d Cir. 2015). A plan administrator is (1) the person specifically designated by the terms of the plan; (2) if the plan does not designate an administrator, the plan sponsor; or (3) if a plan sponsor or administrator cannot be determined, "such other person as the Secretary [of Labor] may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

United contends Count III, brought under 29 U.S.C. § 1132(c)(1) (ECF No. 26 ¶ 438), "fails for the simple reason that United is not the Plan Administrator for any of the ERISA-governed Plans at issue." (ECF No. 41-1 at 28.) Indeed, the Plan documents expressly name the Plan Administrators as parties other than United. (ECF No. 41-2, Exs. 1–2, 4–17, 19–23, 27–32.) Instead, United is listed as the "Claims Administrator." (*Id.*) "Courts in this district have uniformly interpreted [29 U.S.C. § 1132(c)(1)(B)] to apply only to plan administrators. They have refused to

14

extend liability to other entities, including claims administrators and insurance companies." *Wallwork v. Horizon Blue Cross*, No. 16-7095, 2017 WL 3208350, at *2 (D.N.J. July 27, 2017) (dismissing plaintiff's failure to provide plan documents claim with prejudice where the plan documents explicitly identify another party as the plan administrator) (collecting cases).

Plaintiffs claim United is a Plan Administrator because it "exercises discretionary authority and control in its administration of United Plans." (ECF No. 26 ¶ 43.) However, this argument fails because ERISA already "expressly provides that the Plan Administrator is one of three people: the person so designated in the plan, the plan sponsor, or a person designated by the Secretary. 29 U.S.C. § 1002(16)(A). Absent from this exhaustive list is any mention of entities that have authority over a plan." *Wallwork*, 2017 WL 3208350, at *3. Count III is accordingly dismissed with prejudice.

**B.     State Law Claims (Counts V through IX)**

United next argues Plaintiffs' state law claims that arise from ERISA-governed plans and must be dismissed as preempted. (ECF No. 41-1 at 29–32.) Plaintiffs counter these claims are properly pled "in the alternative," and "[t]he Complaint clearly alleges that these counts are limited to claims not associated with an ERISA-governed plan and/or are not preempted by ERISA." (ECF No. 42 at 22) (relying on *Metropolitan Surgical*, 2020 WL 4432430, at *8, wherein the court denied the motion to dismiss state law claims because they were pled in the alternative scenario that the plans were not governed or preempted by ERISA). Unlike here, however, the plaintiff in *Metropolitan Surgical* had successfully pled derivative standing by assignment. 2020 WL 4432430, at *5. As the Court has already determined the remaining non-ERISA plans are precluded from claiming derivative standing by way of the anti-assignment provisions, and are

15

thus dismissed, it need not reach the arguments concerning whether the non-ERISA claims are preempted or whether they sufficiently state a claim.

### IV. CONCLUSION

For the reasons set forth above, United's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.


Dated: August 18, 2022  /s/ *Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　HON. BRIAN R. MARTINOTTI
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE